# MEMORANDA

OF

## CASES NOT REPORTED IN FULL.

---

EVAN JONES, Appellant, v. JOHN JONES, Respondent.

*The scope of a litigation is not necessarily limited to the case presented in the complaint, nor to the relief asked for — A verbal agreement, distinct and collateral to a writing, may be enforced.*

Appeal by the plaintiff from a judgment dismissing the complaint.

The action was brought to compel a specific performance of the following agreement, entered into between plaintiff and defendant who had been co-partners in business in the city of New York and tenants in common of certain real estate.

"This agreement made this 25th day of May, 1875, between John Jones and Evan Jones, both being owners of property equally one-half, do hereby agree to divide the same by appointing Henry McCaddin to receive our bids on said property or part of it, the gross bids to be divided equally if there be any difference over each other's half the other to take a mortgage for the same. The expenses of the conveyancing, each to bear half, each party to be entitled to possession on the first of June, and to assume the tenants in possession and their leases and agreements and the mortgage on the property.

"JOHN $\overset{\text{his}}{\times}$ JONES, [L. s.]
$\phantom{JOHN}$ mark.

"EVAN JONES. [L. s.]

" Witness,

Louis Bottner."

In pursuance of the foregoing agreement the property in question was bid for by the respective parties.

The amount of difference between the plaintiff and defendant upon said bidding and award, after adjusting the mortgages upon the respective properties, amounted to $2,824.50, to be paid by the defendant to the plaintiff, which was to be paid by the said defendant in three years from June 1, 1875, and secured by a second mortgage upon the property bid in by and awarded to said defendant and known as 512 Pearl street, and 56 Centre street, New York city, subject to the prior mortgage then upon said property.

The complaint set forth in substance the following matters : That in pursuance of the said agreement and the said bidding and awards, the said plaintiff and defendant each entered into the possession, control and enjoyment of the respective properties as awarded and to be deeded by the one to the other, and are now in such possession, control and enjoyment thereof, and that the plaintiff caused a good and sufficient deed of conveyance in the law to be made and executed by himself and wife to said defendant of the premises bid upon and awarded to said defendant, and the same was tendered to said defendant on the 10th day of June, 1875, and that at the said time plaintiff demanded from the defendant a deed of the property awarded to him, and that said defendant refused to accept said deed from the plaintiff, or to execute and deliver a deed of the property awarded to him by said McCaddin pursuant to said agreement, said bidding and said award.

The answer, among other things, alleged "that the plaintiff as co-partner of this defendant in business has heretofore collected various sums of money due to the said partnership firm, and holds possession of certain personal property belonging to said firm and has also collected various sums for the rent, use and occupation of the aforesaid premises or some parts thereof, and continues to collect money therefor, one-half part of which belongs to this defendant. That at or after the signing of the alleged agreement dated on or about May 25, 1875, hereinbefore referred to, it was agreed between the plaintiff and defendant as a part and modification thereof that a due accounting should be had between the plaintiff and defendant of all moneys received and paid out by each for the joint account or by either for account of the other, and that such accounts should be adjusted between them, and the amount found

due by the plaintiff to this defendant should be thereupon paid to him. That the plaintiff has neglected and refused and still neglects and refuses to render any account of moneys collected or received or property held by him," etc.

The court at General Term said : " The scope and extent of the litigation is not now necessarily limited to the case presented in the complaint, but it may be enlarged and extended by the answer in such a manner as to require the investigation and determination of other subjects of controversy than those set forth by the plaintiff, and where that is the case it is the practice to require the entire controversy, whether presented by the complaint or answer, or by both together, to be settled and determined by the judgment to be rendered in the case. Upon this subject it was provided by the Code of Procedure, which was in force when the pleadings in this case were made, and has not been substantially changed in the new revision, that where an answer has been interposed, the court may grant to the plaintiff any relief consistent with the case made by his complaint, and embraced within the issue. (Code, § 275.) The dispute of the parties concerning these accounts was within the issue created by these allegations contained in the defendant's answer, for they were to be deemed controverted by the plaintiff, under the provisions of section 168 of the Code of Procedure, and in that way they become a portion of the issues in the action, and under section 275 they should have been heard and determined by the court, upon the evidence submitted to its consideration, or by a reference ordered for that purpose. That the court had the power to determine them is clear from the nature of this section, and it has been so considered in Van Santvoord's Pleadings (by Moak), 273, 274. (*Belknap* v. *Sealey*, 2 Duer, 270.)

" The modern practice is materially changed, in this respect, from that previously existing, and it has, for that reason, been held that a suit does not now fail, as it did formerly, because the plaintiff has made a mistake as to the form of the remedy, but, if the case he states entitles him to any remedy, either legal or equitable, his complaint is not to be dismissed because he has prayed for a judgment to which he is not entitled. (*Emery* v. *Pease*, 20 N. Y., 62, 64, 65.) And the same principle should be applied to whatever forms a portion of the real issue between the parties. Upon

this subject it was said, as to somewhat similar pleadings, in *Wood* v. *Brown* (34 N. Y., 337), that "the complaint is not very artistically drawn to compel the defendant to render an account; but the facts stated, I think plainly show that it is a case where he should render an account of his proceedings, and such remedy may be obtained under the prayer for general relief."

"A similar principle was declared in the case of *Cuff* v. *Dorland* (55 Barb., 481, 496), and it has been quite uniformly applied, under the broad provisions of the Code, by the courts of the State. If that could not be done in a case of this description, where the issue has been sufficiently enlarged and extended for the purpose by the answer, as it has been in this case, then the party entitled to the property awarded to him would be entirely without remedy to obtain it, or he would be obliged to institute a new suit to secure the determination of disputes presented in the one actually commenced by him. This would be unjust and involve the parties in endless litigation and expense. Upon the facts disclosed by the complaint, and the answer taken together and found to be established by the court, there was no need of a dismissal of the complaint in this case. Under the agreements made, and what had transpired for the purpose of acquiring the title to the real estate, the plaintiff had become entitled to the conveyance of the premises awarded to him, as soon as these accounts could be arranged and adjusted. That was the only dispute which the arbitration had left open between the parties, and it was as competent for the court to settle it in this action as it possibly could be in any other suit which might have been brought by either against the other.

"It has been claimed, in behalf of the plaintiff, that evidence of an oral agreement between the parties that their accounts should be settled, before the real estate should be conveyed under the written agreement, was not properly received upon the trial. But that position is not capable of being sustained under the authorities, for the reason that the verbal agreement, that the real estate should not be conveyed under the terms of the written agreement, until these accounts were settled, was entirely consistent with all that the parties chose to put into their writing. That writing was upon its face an incomplete and imperfect contract, and it was, for that

reason, within the power of the parties to agree between themselves, by a verbal and collateral stipulation, that it should not be performed until these disputed accounts had been completely adjusted.

" The law upon this subject is that if the instrument shows-that it was meant to contain the whole bargain between the parties, then no extrinsic evidence can be admitted to introduce a term which does not appear there, but if it be clear that the written instrument does not contain the whole, and the fact be shown that there was a distinct, collateral, verbal agreement, between the parties, not inconsistent with the written contract, the law does not prohibit such distinct, collateral agreement from being enforced. This principle is exceedingly well settled by the authorities. (*Pym* v. *Campbell*, 6 Ellis & B., 370 ; *Wallis* v. *Littell*, 11 C. B. N. S., 369; *Lindley* v. *Lacey*, 17 id., 578; *Morgan* v. *Griffith*, 6 Exch. Law Reports, 70; *Angell* v. *Duke*, 10 Q. B. Law Reports, 174; *Allen* v. *Pink*, 4 M. & W., 140; *Butler* v. *Smith*, 35 Miss., 457, 463; *Earle* v. *Rice*, 111 Mass., 17, 20; *Grierson* v. *Mason*, 3 N. Y. Supreme Court [T. & C.], 185; affirmed 60 N. Y., 394.) Under this rule sustained, as it clearly is, by these authorities, the evidence of the verbal agreement was properly admitted, showing that the deeds were not to be made until these accounts should be settled. But, as already remarked, the existence of this stipulation did not present such a legal obstacle to the plaintiff's case as to justify a dismissal of the complaint. Upon the facts so established and found by the judge the action should have been retained until a proper accounting could have been secured, and this portion of the dispute determined between the parties, and upon that determination a direction could then be made for the payment of the balance found due on the accounts, and the consummation of the written agreement by the execution and delivery of the proper deeds for the conveyance of the real estate.

" The judgment which was directed in the case should, for these reasons, be reversed and an interlocutory judgment entered upon the facts proved and found by the court, directing a reference to a suitable referee, before whom the parties should be required to appear and submit their disputed accounts for decision. And upon the filing and confirmation of his report, a judgment can

then be entered for the final disposition of the entire controversy between these parties."

*John A. Bryan*, for the appellant. *Jacob F. Miller*, for the respondent.

Opinion by DANIELS, J.; BRADY, P. J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Judgment directed as per opinion.

18 443
64 · 574

IN THE MATTER OF ARTHUR McGOLDRICK, APPELLANT, *v.* THE EXECUTOR OF JAMES W. WILSON, DECEASED, RESPONDENT.

*Memoranda made on a slate, and then transferred to an account book — admissibility in evidence of the account book.*

APPEAL by the plaintiff, the claimant, from an order made at Special Term, confirming the report of the referee, appointed under the provisions of the Revised Statutes as to claims rejected by executors, to hear the above matter.

The action was brought to recover payment of a sum alleged to have been due from James W. Wilson, in his lifetime, for horse shoeing.

The court at General Term was of opinion that the plaintiff's books, offered in evidence before the referee, had been erroneously excluded, and in reference to such exclusion of them said :

"The entries were, generally, first made upon a slate, at the time, by the persons who did the work, and on the same day or the following day were transferred from the slate to a day-book, and finally entered upon a ledger. Most of the entries are shown to have been made by McGoldrick, as he performed much the greater share of the work. Several witnesses were examined, who were employed by McGoldrick in the business, and testified in regard to the manner the accounts were kept. McGoldrick testified as follows, which does not appear to have been objected to.

" Q. State the way in which these accounts got in those books ?

" A. The work was done in the day, and at night it was entered on the slate, and taken off the slate, put on the day-book, every day generally, and every two or three days, or sometimes once a week, transferred into the ledger ; it was put on the slate and